**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                                    |   |                              |
|------------------------------------|---|------------------------------|
|                                    | ) |                              |
|                                    | ) | 05 C 3445                    |
| GREEN BAY PACKAGING, INC.,         | ) | Honorable James F. Holderman |
| Plaintiff,                         | ) |                              |
|                                    | ) |                              |
| vs.                                | ) |                              |
|                                    | ) |                              |
| MIDWEST PACKAGING, LLC,            | ) |                              |
| JEFF OSCARSON                      | ) |                              |
| Defendants.                        | ) |                              |

**SECOND MOTION TO RE-OPEN CASE AND
ENTER JUDGMENT AGAINST JEFFREY OSCARSON**

Green Bay Packaging, Inc., ("Green Bay"), by and through its attorneys, moves this Court for the entry of an Order reopening this case and entering judgment against Jeff Oscarson ("Jeff") and in favor of Green Bay, ("Second Motion") and in support thereof, Green Bay states as follows:

**Summary**

Originally there were three defendants in this breach of contract case: Midwest Packaging LLC ("Midwest") Jeff, and Fred Oscarson ("Fred"). Fred is Jeff's father. In 2005, this Court entered judgment against Midwest and in favor of Green Bay. Because Fred and Jeff filed for bankruptcy, this case was stayed against them.

On or about July 2, 2008, the Bankruptcy Court entered an Order vacating Jeff's discharge. On or about July 17, 2008, Green Bay filed its first Motion to Re-Open Case and Enter Judgment Against Jeff Oscarson ("First Motion"). That same day, Jeff filed a motion in the Bankruptcy Court to reconsider the July 2nd opinion denying discharge ("Motion to Reconsider"). So as to conserve judicial resources and give Judge Hollis time to rule on the

Motion to Reconsider, Green Bay voluntarily withdrew its First Motion without prejudice on August 5, 2008.

On September 9, 2008, Bankruptcy Judge Hollis entered an order denying the Motion to Reconsider. The time for filing a notice of appeal of that decision under Federal Rule of Bankruptcy Procedure 8002 has expired. By this Second Motion, Green Bay now asks this Court to re-open this case and enter judgment against Jeff.

**Facts**

1. Green Bay manufactures paperboard products which it sold to Midwest under an open line of credit. The line of credit was supported by a guaranty ("Guaranty") pursuant to which Fred and Jeff personally agreed to repay all amounts due Green Bay from Midwest. A true and correct copy of the Guaranty is attached as <u>Exhibit A</u>. Under the Guaranty, Fred and Jeff agreed to pay Green Bay "all debts, obligations and liabilities of [Midwest] to [Green Bay]."

2. Midwest failed to pay Green Bay. On June 10, 2005, Green Bay filed a breach of contract complaint against Midwest, Jeff and Fred.

3. On October 13, 2005, Fred and Jeff filed separate bankruptcy petitions in the Northern District of Illinois. Midwest did not file for bankruptcy. As a result of their bankruptcy filing, this case was stayed against Fred and Jeff.

4. November 9, 2005, Green Bay filed a motion for summary judgment against Midwest. A true and correct copy of Green Bay's Rule 56.1 Statement in Support of its Motion for Summary Judgment is attached hereto and made a part hereof as <u>Exhibit B</u>.

5. Midwest did not oppose the motion for summary judgment and, on November 22, 2005, this Court entered an Order granting Green Bay's Motion for Summary Judgment against Midwest. A copy of the Court's Order is attached hereto and made a part hereof as <u>Exhibit C</u>.

6. The Court noted in its Order that since Jeff and Fred had filed for bankruptcy the case against them was stayed. The Court instructed the "Parties [to] advise this court upon termination of the bankruptcy proceedings in [Fred and Jeff's cases]".

**Fred and Jeff's Bankruptcy Cases**

7. Green Bay filed separate Adversary Complaints against both Fred and Jeff in their bankruptcy cases seeking to hold non-dischargeable the obligations to Green Bay that were created under the Guaranty. In addition, Green Bay sought to vacate Jeff's discharge as a result of the fraud Jeff committed by failing to disclose transfers that Jeff made to his wife, Laura, and a bank account that he did not disclose on his bankruptcy schedules.

8. On January 17 and 18, 2007, Bankruptcy Judge Hollis conducted a combined trial on Green Bay's Adversary Complaints against Fred and Jeff. Following trial, Judge Hollis ruled against Green Bay and in favor of Fred and Jeff. Green Bay appealed Judge Hollis' decision regarding Jeff to the District Court.

9. On November 7, 2007, Judge Andersen issued an opinion on Green Bay's appeal. In his Opinion, Judge Andersen affirmed, in part, Judge Hollis' ruling, however, he remanded the case back to Judge Hollis for further findings on the issue of whether Jeff's met his burden of proof that he did not have a fraudulent intent when Jeff filled out his bankruptcy schedules and failed to disclose $52,000 of transfers to his wife, Laura, and a bank account that contained approximately $2,600 on the date of Jeff's bankruptcy filing. See Exhibit D.

10. Following remand, on July 2, 2008, Judge Hollis issued a new Memorandum Opinion, which made further findings as directed by Judge Andersen. In her new Opinion, Judge Hollis reversed her original opinion with regard to Jeff, and she granted Green Bay's request to vacate Jeff's discharge. A separate Judgment Order vacating Jeff's discharge was also entered

by Judge Hollis. A copy of Judge Hollis's Memorandum Opinion and Judgment Order is attached hereto and made a part hereof as Exhibit E.

11. On or about July 17, 2008, Green Bay filed its First Motion to re-open this case in reliance on the July 2nd Order vacating Jeff's discharge. That day, Jeff filed a Motion to Reconsider the denial of his discharge. See Exhibit F. Green Bay then voluntarily withdrew the First Motion to allow Judge Hollis to rule upon the Motion to Reconsider. See Group Exhibit G (Motion for Withdrawal and Minute Order) .

12. On September 9, 2008, Judge Hollis entered an Order denying the Motion to Reconsider, which Order was entered on the Bankruptcy Court's docket on September 10, 2008. See Exhibit H. Under Federal Rule of Bankruptcy Procedure 8002, a notice of appeal shall be filed with the clerk within 10 days of the date of entry of the order which the party is appealing. Fed. R. Bankr. Pro. 8002. That appeal notice period has expired and Green Bay has not received any such notice as of the date of this filing.

13. Green Bay files this Second Motion to re-open this case on the basis of the vacation of Jeff's discharge.

**Jeff is Liable to Green Bay under the Guaranty**

11. As the result of his discharge being vacated, Jeff is no longer entitled to the protections of the Bankruptcy Code. Likewise, Jeff is no longer immune from Green Bay's efforts to collect monies due Green Bay under the Guaranty.

12. This Court has previously entered judgment in favor of Green Bay and against Midwest on Green Bay's breach of contract claim. Exhibit C. The Court also found that Green Bay suffered injury in the amount of $668,441.23. These findings are final and non-appealable.

13. As Jeff has previously agreed to pay "all debts, obligations and liabilities of [Midwest] to [Green Bay Packaging]" pursuant to the Guaranty (<u>Exhibit A</u>), Green Bay now requests that this Court enter judgment against Jeff in the amount of $668,441.23, plus costs of collection incurred by Green Bay, pursuant to the Guaranty.

13. Illinois law[1] is clear on this point: "a guaranty is a promise of a third part to pay the obligation of the party primarily liable if the party primarily liable fails to do so". *Bandag Inc. v. National Acceptance Company of America*, 855 F.2d 491, 494 (7th Cir. 1988). Here, Midwest has failed to pay Green Bay $668,441.23. Jeff has agreed to pay "all debts, obligations and liabilities of [Midwest] to [Green Bay]….[and Jeff] further guarantees payment and promises to pay all costs, expenses and fees that are incurred at any time by [Green Bay] in endeavoring to collect any sums from [Midwest or Jeff]." <u>Exhibit A</u>, ¶ 1. Accordingly, Jeff is liable to Green Bay for $668,441.23, plus costs of collection incurred by Green Bay.

**<u>Under the Doctrine of Res Judicata, Jeff is Bound by This Court's Prior Order</u>**

14. Under the doctrine of *res judicata*, Jeff is bound by this Court's Order finding that Midwest is liable to Green Bay. "[A] final judgment on the merits of an action precludes the parties ***and their privities*** from re-litigating issues that were or could have been raised in [the prior] action." *In re Wien*, 155 B.R. 479, 483 (Bankr. N.D.Ill 1993) (emphasis added).

> Generally, privity in the res judicata sense involves a 'person so identified in interest with another that he represents the same legal right' regardless of whether the person is a formal party of record. [citation]. Identification in interest can be shown by two sets of circumstances which are relevant here: the interests of a person are placed before the court by one authorized to sue or defend on his behalf; ***or, a person with an interest in the outcome controls or shares control of a suit by another.*** See 1B Moore's Fed.Prac. ¶ 0.411[1] and cases cited. In the presence of these circumstances, such person is in privity with a party to a judgment and is therefore bound by that same judgment. (emphasis added)

---

[1] Jeff is a citizen of Illinois. Midwest was also an Illinois Limited Liability Company.

*In re L & S Industries, Inc.,* 122 B.R. 987, 993 (Bankr. N.D. Ill., 1991). *See also Frandsen v. Westinghouse Corp.* 46 F.3d 975, 978 (10th Cir. 1995); *In re Belmont Realty Corporation,* 11 F.3d 1092 (1st Cir. 1993) (*res judicata* based on privity binds corporate officer to judgment against corporation where officer actively participated in events that preceded claim). *NLRB v. Donna-Lee Sportswear Co., Inc.* 836 F.2d 31 (1st Cir. 1987).

15. Jeff actively participated in Midwest when Green Bay sold the goods that constitute its claim. Jeff was the principal officer of Midwest when this case was initially filed. Since Jeff had personally guaranteed payment of Midwest's obligations to Green Bay, Jeff has always had an interest in the outcome of this case. Clearly Jeff was in privity with Midwest and the finding against Midwest is *res judicata* as Jeff's liability to Green Bay.

**Relief Requested**

Wherefore, for the reasons set forth herein, Green Bay requests that this Court re-open this case and enter judgment in favor of Green Bay and against Jeff Oscarson in the amount of $668,441.23, plus costs of collection incurred by Green Bay.

                    Respectfully submitted,

                    GREEN BAY PACKAGING, INC.

                    By: /s/ Scott N. Schreiber
                        One of Its Attorneys

Scott N. Schreiber (ARDC #6191042)
Shelly A. DeRousse (ARDC #6274798)
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
(312) 377-7766
Facsimile: (312) 423-8189